RYAN v. METROPOLITAN JOCKEY CLUB et al.

(Circuit Court, E. D. New York. June 11, 1904.)

PATENTS—INFRINGEMENT—STARTER'S GATE FOR RACE TRACKS.
> The Ryan patent, No. 553,740, for a starter's gate for race tracks, claim 1, construed in the light of amendments made when before the patent office, and *held* not infringed.

In Equity. This cause comes here upon pleadings and procfs, complainant praying an injunction and accounting for alleged infringement of U. S. Letters Patent 553,740, issued January 28, 1896, to Patrick Ryan for starter's gate for race tracks.

W. P. Preble, for complainant.

Briesen & Knauth, for defendants.

LACOMBE, Circuit Judge. The object of the invention, as stated in the specifications, is "to provide a practical device for the use of the race starter which will afford a visible barrier across the race track until removed by the starter, which is done instantly when a fair start is had, so that the riders of horses on the track as they pass the starter's stand can see the barrier ahead of them, and if it is not moved will be warned to stop, which they can do before reaching the barrier, which is in the form of a gate, hung so as to rock across the track." For the proper support of the barrier two pairs of posts are vertically erected, one pair at each side of the race track, and at a correct distance in advance of the starter's box. The barrier is arranged, by mechanism which need not be here described, so as to rotate upwardly, and thus be thrown out of the way more quickly than if it were moved sideways, or rose in two arms from the middle, as railway gates usually do. The specification says:

"The gate or transverse barrier is preferably formed of strong canvas, but may be made of any other available material having pliability and necessary strength. The gate may be formed of imperforate material, or have series of spaced and marginally strengthened perforations produced in it; but it is deemed essential that the gate, if formed of textile material, be strengthened with a rope binding and also with intermediate ropes. The length of the gate is so proportioned that a space will be afforded at each end between said ends and the pair of front posts whereon the gate is hung."

The claim which complainant avers to be infringed is the first, reading as follows:

"(1) In a horse-starting apparatus for race tracks, the combination. with supports at opposite sides of the track, of a gate having its end bars pivoted at one end to the supports, so as to swing down between the said supports, springs for normally holding the gate swung up, latches for holding the gate depressed between the supports, and means for releasing the latches, substantially as described."

The defendants have two supports, one on each side of the track. At the top of each support is pivoted an arm, which swings in a plane parallel to the direction of the track. From one arm to the other are stretched two narrow strips of canvas, which are united to each other every five feet by connecting cross pieces of the same material. It may be said to be a two-bar gate of tape-like canvas reduced to its simplest form. By the use of appropriate mechanism it may be released, and is then swung up out of the way.

Two patents which have been put in evidence by the defendants concededly anticipate the patent in suit. One is No. 481,260, August 23, 1892 (application filed December 30, 1891), to Edwin Forbes for apparatus for starting races, which consists of a light fence or gate suspended from a swinging carrier, which hangs

across the track, and can be suddenly lifted clear out of the way. The other is No. 481,835, August 30, 1892 (application filed December 18, 1891), to James J. Sullivan for a device for starting horse races, which consists of a "panel or netting affording a perfect but harmless barrier" when down, and which can be instantly swung forward and upward out of the path of the horses. Complainant, however, by satisfactory evidence has carried the date of his invention back of both these applications.

It seems unnecessary to discuss any question except that of infringement. One noticeable difference between the two structures is that the patent calls for a gate essentially strong, which when down would operate as a barrier should a jockey neglect to check or turn his horse before reaching it, while the defendants' structure is flimsy, and adapted to part at the impact of a horse's body. Moreover the claim declared upon contains words of limitation, which cannot be ignored. When plaintiff's application was under consideration in the patent office, the patents to Forbes and to Sullivan were cited against it, and various amendments were suggested, in order so to qualify the claims as to avoid the references. It is no doubt true, as complainant's counsel contends, that Ryan is not to be cut off from showing that his invention antedated those references, because when they were cited against him he did not announce to the examiner that he was earlier, and did not ask to have an interference declared. Nevertheless whatever changes he elected to make in his claims in order to secure their issue without the delay and expense of an interference he must now stand to.

Claim 1 was rejected when it read:

"(1) In a horse-starting apparatus for race tracks, the combination, with supports at opposite sides of the track, of a pivoted and spring actuated gate carried by the supports, latches for holding the gate depressed, and means for releasing the latches to permit the gate to swing upward out of the way, substantially as described."

The applicant thereupon amended it so as to read as quoted above, in which form it was issued. When the two paragraphs are compared, it is found that the only distinctive changes are that the end bars are pivoted at one end to the supports, and that they are arranged "so as to swing down between said supports," and allow the gate to be held "between the supports" when depressed. Had the applicant insisted that he was the first to apply this device as an aid to the starter, he would no doubt have secured the allowance of his claim as first made, without any restriction as to manner of pivoting nor as to location of gate, whether between, ahead of, or behind the supports. But he elected to make the change, and must abide the consequences. In defendants' apparatus neither the canvas barrier nor the arms which carry it swing down between the supports. Their apparatus, therefore, lacks an element which the patentee has made an essential of the claim sued upon.

The bill is dismissed, with costs.